**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JOHN G. WOODS,**

      **Petitioner,**

**v.**                                                    **CASE NO. 8:03-CV-2336-T-27MAP**

**JAMES McDONOUGH,[1]**

      **Respondent.**

_____/

## ORDER

Petitioner, a State of Florida inmate represented by counsel, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 1998 convictions entered by the Sixth Judicial Circuit Court, Pinellas County, Florida (Dkt. 1). Respondent has filed a response to the petition (Dkt. 12) and Petitioner has filed a reply thereto (Dkt. 15). The matter is now before the Court for consideration on the merits of the petition.

### Background

Petitioner and co-defendants Todd Hughes and Eric Anderson were charged with having been involved in the beating and sexual battery of Dean Goddard, a tenant residing in a garage apartment owned by the Hughes family. Petitioner was charged by Information with sexual battery with serious personal injury (Count One), kidnapping (Count Two), attempted sexual battery (Count Three), and aggravated battery (Count Four) (Dkt. 12, Ex.

_____

[1]James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

17, Vol. I at R. 7-8).  Represented by the public defender, Petitioner proceeded to jury trial on August 25, 1998.

The jury returned guilty verdicts on Counts One, Three, and Four, and a guilty verdict of the lesser included offense of false imprisonment on Count Two. *Id.* at R. 46-49. Petitioner was sentenced to terms of natural life on Count One, 15 years on Counts Three and Four, and 5 years on Count Two, with all sentences to run concurrently.  *Id.* at R. 52-61.

Petitioner, represented by court-appointed counsel, pursued a direct appeal, asserting that the trial court erred in: (1) excluding the proffered impeachment testimony of Connie Alderman, (2) scoring sexual conduct [sic] points on an attempted sexual battery conviction; and (3) imposing a life sentence in violation of the United States and Florida Constitutions (Dkt. 12, Ex. 1). Petitioner's convictions and sentences were affirmed May 17, 2000 in a per curiam order without written opinion, with the mandate issuing on June 30, 2000. *See Woods v. State*, 763 So. 2d 330 (Fla. 2d DCA 2000) (table decision).

Represented by counsel, Petitioner filed a motion to correct an illegal sentence pursuant to Fla. R. Crim. P. 3.800(a) on April 2, 2001 (Dkt. 12, Ex. 6). Petitioner asserted as grounds for relief: (1) the attempted battery charge should have been scored as a level seven offense rather than a level nine offense because there was no serious physical injury or threat of serious physical injury; (2) Petitioner's two prior convictions for possession of cocaine were improperly scored; and (3) Petitioner should not have been assessed victim injury points for sexual contact on the attempted sexual battery conviction. *Id.* The trial court summarily denied Petitioner's claims.  (Dkt. 12, Ex. 8). The trial court's decision was affirmed on July 24, 2002.  *See Woods v. State*, 826 So. 2d 304 (Fla. 2d DCA 2002) (table decision).  The mandate issued on August 20, 2002.

On May 15, 2002, while Petitioner's Rule 3.800(a) motion was pending, post-conviction counsel filed an application for state post-conviction relief pursuant to Fla. R. Crim. P. 3.850, asserting that trial counsel was ineffective in failing to:

1. File a motion to suppress an audio tape of Petitioner's statement to law enforcement;

2. Pursue a voluntary intoxication defense;

3. Object to the sentencing guidelines score sheet submitted by the State at sentencing;

4. File a motion for a new trial; and

5. Object to the duress instruction.

Dkt. 12, Ex. 12.

On March 31, 2003, the trial court summarily denied Petitioner's ineffective assistance of counsel claims (Dkt. 12, Ex. 13). That decision was affirmed on October 3, 2003, per curiam, without written opinion. *Woods v. State*, Case No. 2D03-1987 (Fla. 2d DCA 2003). *See* Dkt. 12, Ex. 15.

Petitioner filed a timely petition for federal habeas relief on October 29, 2003 (Dkt. 1). He presents 13 grounds for relief in his petition (Dkt. 1).  Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. §§ 2254(d)-(e) (Dkt. 9 at 6). Having reviewed the record, the parties arguments, applicable statutes, and controlling case law, for reasons set forth below, this Court agrees with Respondent.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell,* 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent,* 538 U.S. 634, 638-39 (2003); *Clark v. Crosby,* 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corrs.,* 278 F.3d 1245, 1255 (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct and a petitioner must rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson,* 353 F.3d at 890-91.

### Evidentiary Hearing

To be entitled to an evidentiary hearing on habeas claims, the petitioner must "alleges facts that, if proved at the hearing, would entitle petitioner to relief." *Breedlove v. Moore,* 279 F.3d 952, 960 (11th Cir. 2002) (citation omitted). Because "such a hearing

would not assist in the resolution of [Petitioner's] claim[s]"), an evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a). *See Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied).

## Discussion

Since Petitioner's conviction was entered after the AEDPA was enacted, his petition is subject to its provisions. Where a state court initially considers the issues raised in the petition and enters a decision on the merits, § 2254(d) governs review of the petitioner's claim. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001).

Petitioner's first two claims were raised on direct appeal. Although the claims were rejected without written opinion, for a state court's resolution of a claim to be an adjudication on the merits so that the determination will be entitled to deference for purposes of federal habeas review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d at 1255.

### Ground One

In Ground One, raised by Petitioner on direct appeal as Ground Three, Petitioner contends that "a life sentence without possibility of parole imposed on a defendant with no history of violent incidents is disproportionate and [thus] constitutes cruel and unusual punishment proscribed by the Eighth Amendment." Dkt. 1 at 5. Petitioner's challenge to the constitutionality of his sentence fails.

Historically, the Eighth Amendment has protected individuals with respect to the method of punishment, not the length of a sentence of imprisonment. *Harmelin v. Michigan*, 501 U.S. 957, 979 (1991); *Hall v. State*, 823 So. 2d 757, 760 (Fla.2002).

In *Rummel v. Estelle*, the Supreme Court recognized that "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime," but "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." 445 U.S. 263, 271-72 (1980). In *Solem v. Helm*, the Supreme Court held "that a criminal sentence must be proportionate to the crime for which the defendant has been convicted." 463 U.S. 277, 290 (1983). In 1991, however, the Supreme Court questioned *Solem*'s proportionality requirement. *Harmelin v. Michigan*, 501 U.S. at 965 (plurality opinion) ("We conclude from this examination that *Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee.").

More recently, the Supreme Court has clarified *Solem* and *Harmelin*, ruling that the "gross proportionality" standard established in *Rummel* is "clearly established" within the meaning of Section 2254(d). *See Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). The Supreme Court recognized, however, that "the precise contours of [the gross disproportionality principle] are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73.

In *McCullough v. Singletary*, 967 F.2d 530 (11th Cir. 1992), *cert. denied*, 507 U.S. 975 (1993), the Eleventh Circuit found that because the convictions for sexual assault and burglary in the first degree involved a crime of violence against a person, the petitioner's sentence of life without possibility of parole did "not rise to the level required to shock the

judicial conscience nor does it constitute cruel and unusual punishment." *Id.* at 536. *See also Adaway v. State*, 902 So. 2d 746, 749 (Fla. 2005) (life sentence without possibility of parole was not grossly disproportionate to the offense of sexual battery of a minor).

Here, Petitioner was sentenced to life imprisonment on his conviction of sexual battery. Considering the gravity of the offense of conviction, Petitioner's sentence is not disproportionate to the severity of the crime.[2] Petitioner's offense involved a prolonged beating of the victim and penetration of his anus with a "wide-mouth beer bottle" while one or more co-defendants held him down. A life sentence without parole cannot be said to be disproportionate to severity of this offense conduct. Accordingly, Petitioner's contention that "the [life] sentence was disproportionate because it was grossly in excess of what was provided by the law for persons in Petitioner's position in the same jurisdiction" need not be addressed. (Dkt. 15 at 6). *See Hamelin*, *supra*, at 1005 (Kennedy, J., concurring in part and concurring in the judgment); *McCollough, supra*, at 535; *Adaway, supra*, at 749.

Petitioner has not shown that the state court's rejection of his proportionality claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," as required by Section 2254(d).

## Grounds Four and Ten

In Grounds Four and Ten, Petitioner asserts that he was denied effective assistance of counsel. To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

---

[2] *Rummel v. Estelle*, supra. (In *Rummel*, a mandatory life sentence was imposed pursuant to the Texas recidivist statute for the theft of $120.00 by false pretenses. Rummel's theft did not include any threat or violence).

Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head,* 244 F.3d 831, 835-37 (11th Cir. 2001). State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, see *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), a burden that Petitioner has failed to carry. *See* § 2254(e)(1).

While the trial court did not cite *Strickland* or its standard of review for an ineffective assistance of counsel claim when it rejected Petitioner's claim of ineffective assistance, "a state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions. . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Id.* at 16 (quoting *Early v. Packer,* 537 U.S. 3, 7-8 (2002)). Petitioner must therefore establish that the trial court's determination that his

-8-

ineffective assistance of counsel claims raised in his Rule 3.850 motion lacked merit was objectively unreasonable under *Strickland* or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).  Petitioner has not made this showing.

In Ground Four, Petitioner contends that trial counsel was ineffective in failing to investigate the circumstances and "move for suppression of [Petitioner's] recorded admission's on the ground that they were involuntary and inadmissible when they were the product of an improper *quid pro quo* agreement" with the investigating officers (Dkt. 1, A-2 at 1). This claim was raised in Petitioner's Rule 3.850 proceedings and rejected by the trial court.  Reading Petitioner's Rule 3.850 appellate brief narrowly, Respondent contends that this claim was abandoned on appeal because post-conviction counsel argued in the Rule 3.850 appellate brief that the trial court erred in failing to hold an evidentiary hearing on the claims.  A review of the brief reveals, however, that three of the five issues raised in the Rule 3.850 motion were actually briefed on appeal.[3]  The claim is, therefore, properly exhausted. *See Woods v. State*, Case No. 2D03-1987 (Fla. 2d DCA 2003).

In its order denying the claim, the trial court found as follows:

> Defendant alleges that counsel was ineffective for failing to file a motion to suppress his audio taped statement to police. Defendant argues that he agreed to waive his rights and talk to law enforcement, however he refused the detectives' request to tape his statement. Defendant argues that Detective Corbett activated a recorder in his pocket without Defendant's knowledge, thereby producing an audiotape. Defendant argues that he

---

[3]As Petitioner notes, page 6 of the appellate brief is missing (Dkt. 12, Ex. 14).  A review of the brief, however, confirms that Petitioner presented argument in support of his claims that trial counsel was ineffective in failing to move to suppress the audio recording of Petitioner's statement, *id.* at 2-5, failing to pursue a voluntary intoxication defense, and failing to object to sentencing guideline score sheet errors, *id.* at 7-8. As discussed *infra*, Petitioner informed the appellate court that he was abandoning the remaining two claims presented in the Rule 3.850 motion. *Id.* at 2.  Given that the only argument missing from the copy of the Rule 3.850 appellate brief filed by Respondent relates to trial counsel's failure to present a voluntary intoxication defense, an issue not raised in the § 2254 petition, there is no need to expand the record.

elected to invoke his right to remain silent if an audiotape was used, making the recorded statement clearly involuntary. Defendant states that he was prejudiced because he testified at trial that law enforcement officers questioned him using deceptive tactics and his answers were taken out of context. Defendant argues that the illegally obtained audiotape provided the exact context of the interview and prejudiced Defendant's theory of defense.

Defendant is not entitled to relief under this claim. Defendant waived his right to remain silent and voluntarily made statements to police detectives. Defendant now contends that his statements were less than voluntary because he was unknowingly tape-recorded. The mere fact that Defendant did not want to be tape-recorded, however, does not render Defendant's statements involuntary. In his motion, Defendant fails to cite any statutory provisions requiring the police to obtain his consent before taping him. It is clear that Defendant did not have any expectation of privacy at the time he was giving his statement to police. *See Boyer v. State*, 736 So. 2d 64 (Fla. 4th DCA 1999). In addition, even if the recording were suppressed, the prosecution likely would have been allowed to admit it at trial to impeach testimony from Defendant that his statements were taken out of context. *See Bryan v. State*, 748 So. 2d 1003 (Fla. 1999) citing *Mincey v. Arizona*, 437 U.S. 385 (1978). Defendant, therefore, fails to demonstrate how he was prejudiced.

Dkt. 12, Ex. 13.

For reasons discussed below, this Court concludes that the trial court's adjudication of this claim is supported by the record and accordingly, its decision was based on a reasonable determination of the facts, was not contrary to clearly established federal law and did not involve an unreasonable application of Supreme Court precedent. Petitioner does not deny having waived his *Miranda*[4] rights in writing. Instead, he argues that he entered a *quid pro quo* agreement with the detectives when he stated that he did not want his statement recorded and that this agreement was broken when Detective Nave "secretly" recorded the remainder of the interview.

Detective Nave testified regarding Petitioner's interview. According to Detective Nave, Petitioner voluntarily presented himself at the Clearwater Police Department four

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966)

days after the incident and agreed to speak with the investigating officers regarding his role in the attack on the victim.   Detective Corbett read Petitioner his *Miranda* rights and Petitioner responded that he understood the rights as read to him (Dkt. 12, Ex. 17, Vol. III at 325-29).   Petitioner then signed a written waiver of his *Miranda* rights.

During Detective Nave's testimony, the following exchange occurred:

Prosecutor:      Your Honor, may we approach the bench?

Court:            Approach.

Prosecutor:      Judge, at this time I would like to proffer *Miranda*, [sic] if they want it done outside the presence of the jury.

Trial Counsel:  Judge, at this point I'd waive that objection.  I've already spoke to Mr. Woods about that.  He understands what is coming, what he would be waiving with respect to motions on this.

Court:            Are you stipulating that the statements were given freely and voluntarily and knowingly after the advice of *Miranda*?

Trial Counsel:  I'm not stipulating as far as a factual matter.  I'm stipulating to it as a technical matter.  We know that we are going to open the door to this one way or the other.

Court:            I think you better go to the proffer and do it in the presence of the jury.  Do it with the form for the jury so [sic] finds it's been freely and voluntarily made.

Prosecutor:      Okay.

. . . . .

Prosecutor:      Did you at some time during your conversations with Mr. Woods ask him if he would allow you to tape record his statement?

Detective:       Yes.  Detective Corbett asked him.

Prosecutor:      And what was his response to that?

Detective:       That he didn't want it tape-recorded.  He preferred that it wasn't.

Prosecutor:      Excuse me?

Detective:      That he did not want it -- he did not want to put it on tape, no.

Prosecutor:     Did you personally have a tape recorder with you at the interview?

Detective:      Yes.

Prosecutor:     At this time, what did yo do with your tape recorder?

Detective:      I activated the tape recorder.

Prosecutor:     Despite his request not to?

Detective:      Yes.

Prosecutor:     When you did so, did you do so in a manner obvious to him or did you keep it in a position where he would not possibly know that he's being taped?

Detective:      It was in my hand. I had my -- the book that I was writing on and my pad underneath it. I don't know if he could see it or not.

Prosecutor:     And did you continue the interview with him then?

Detective:      Yes.

Prosecutor:     Was the remainder of the interview an attempt to kind of summarize what he had told you?

Detective:      Yes.

Prosecutor:     And to your knowledge at this time the tape was going?

Detective:      Yes.

Prosecutor:     At that point did you begin to take pretty much the active role of questioning?

Detective:      Yes.

                . . . . .

Prosecutor:     Now, Detective, you described for us turning this tape recording on. What type of tape recorder do you have?

Detective:      I had actually borrowed this tape recorder from a Clearwater detective. It was a small microcassette. One of the little small hand-helds.

Prosecutor:      Your Honor.  If I may approach the clerk.

Court:           You may.

Prosecutor:      Judge[,] may the record reflect, Your Honor, I'm showing Defense Counsel State's Exhibits 12-A and 12-B for identification purposes.

Court:           So reflect.

Trial Counsel:   May we approach, Your Honor?

Court:           Approach.

                 (Bench conference)

Trial Counsel:   Judge I have the original tape.  I have listened to it until I'm blue in the face and have taken it out to the jail.  They have something here that is an enhanced copy.  I'm not saying there is any bad faith or substantial *Richardson*[5] violation hearing, but I would like to hear it out of the presence of the jury.  I don't want to hear it for the first time in front of the jury.

Prosecutor:      I have no objection.  It is about ten minutes long.

Court:           It's enhanced?

Prosecutor:      Yes.

Court:           In what way?

Prosecutor:      The initial tape.  Made copies for defense, ourselves.  Really not much difference when you listen to it.  Really muffled.  I had them try to take out of some the muffling.  I think they done a little bit of that.  They have taken out some of the static, and the Detective has listened to this tape as well as the initial one.  She initialed this tape as accurate.

Trial Counsel:   My concern if it's not true and accurate, as an attorney, I must protect the man's right to trial.  If it's something I have never heard, I'm obliged to hear it.

---

[5] In *Richardson v. State*, the Florida Supreme Court held that upon learning of a possible violation of the discovery requirements of the criminal rules, the trial court must conduct a hearing to determine whether there was noncompliance with the rule, and if so, whether it resulted in prejudice to the ability of the defendant to properly prepare for trial. 246 So. 2d 771, 775 (Fla.1971).

Court:          I agree.  We'll take the ten minutes to at least allow him to listen to
                see if there is an issue for a Richardson violation.

Trial Counsel:  Thank you.

. . . . .

Court:          I think it's very appropriate for him to have the opportunity to listen
                to it.  we all can listen to it here for the first time in case there is any
                legal objection.  I'll give the jury a ten-minute break.

Trial Counsel:  That is fine.

. . . . .

Court:          Do you have any discovery objection to the admissibility of the tape?

Trial counsel:  No, I'm not claiming any procedural prejudice as to -- essentially the
                context and the statements does not come as a surprise . . . .

Court:          And the enhancement of the tape does not in any substantial way
                affect your preparation of the case, is that correct?

Trial Counsel:  No, Your Honor.

. . . . .

Prosecutor:     . . . . My main concern in playing the tape is that I want to avoid
                obviously any arguments that we all have been subject to, that why
                wasn't it taped, and if it was taped, why didn't we hear it?

Dkt. 12, Ex. 17, Vol. III at Tr. 347-54.

Petitioner's assertion that trial counsel failed to investigate the circumstances

surrounding the recording of his statement are belied by the transcript of the bench

conference.  Trial counsel was obviously aware of the recording and the circumstances

under which it was made.  Counsel told the Court that he spoke with Petitioner and that "he

understands what is coming, what he would be waiving with respect to motions on this."

Trial counsel confirmed that he/she had listened to the tape, "until I'm blue in the face and

-14-

have taken it out to the jail." Trial counsel refused to stipulate to the voluntariness of the recorded statements, requiring the State to meet its burden.

Before the audio tape was recorded, Petitioner gave oral post-*Miranda* statements regarding his role in the attack. Prior to the recording, Petitioner informed the detectives that he did not want to record his statement. Petitioner testified that Detective Nave's testimony regarding Petitioner's unrecorded statements inaccurately represented what he actually said, contending that the tape recording is "not even half of the interview." (Dkt. 12, Ex. 17, Vol. IV, Tr. 413). During trial, counsel attacked the manner in which the detectives conducted the interview, using the existence of the audio tape to support his assertion that had the detectives wanted to create an accurate record, they would have recorded the entire interview.

Petitioner contends that his tape recorded statement was not voluntary under *Bram v. United States,* 168 U.S. 532 (1897)[6] (holding that a confession "obtained by any direct or implied promises, however slight" is not voluntary). *Bram,* however, is no longer the proper test. While *Bram* has not been directly overruled, it has been limited such that as a federal constitutional matter, the test for determining the voluntariness – or, rather, the involuntariness – does not turn entirely on whether the police made any promises or threats, but rather whether, in light of the totality of the circumstances, the will of the defendant was overborne. *See, e.g., Arizona v. Fulminante,* 499 U.S. 279, 285 (1991). Florida law is in accord. *See Johnson v. State*, 696 So. 2d 326, 329 (Fla. 1997). Here,

---

[6] In reviewing the viability and scope of *Bram*, the Eleventh Circuit concluded that the Supreme Court was not merely concerned with the possible implication of an "implied" promise by a law enforcement officer, but Bram's overall circumstance with respect to the detective obtaining his statements. *See Taylor v. State, 148 F.3d 1276 (11th Cir. 1998) (citing Bram, 168 U.S. at 562* ("the situation of the accused, and the nature of the communication . . . necessarily overthrows any possible implication that his reply . . . could have been the result of a purely voluntary mental action")).

Petitioner has not shown that, in light of all the surrounding circumstances, his will was overborne and that his recorded statement was involuntary. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973). Counsel's failure to challenge the recording cannot therefore be said to have been deficient performance. Moreover, as the state trial court determined, Petitioner cannot show prejudice even if counsel's performance was deficient.

Police threats or promises are considered as part of the totality of the circumstances. *E.g., Miller v. Fenton,* 796 F.2d 598, 608 (3rd Cir. 1986); *United States v. Shears,* 762 F.2d 397, 402 (4th Cir. 1985). Thus, the mere existence of a threat or promise in connection with a confession does not render the confession *per se* involuntary. *United States v. Braxton,* 112 F.3d 777, 780 (4th Cir. 1997). In this case, Petitioner does not argue that in order to obtain his admissions, the police threatened him with violence or retaliation, or subjected him to undue or unusual pressure, all of which have been recognized as coercive tactics. Nor has he produced any extrinsic evidence of a promise by the detectives, explicit or otherwise, offered in exchange for his statement. At best, Petitioner alleges that he thought the detective's acceptance of his negative response when asked to give a recorded statement was an "implied promise" not to record the remainder of the interview. Standing alone, this is not sufficient to rise to the level of inducement or coercion warranting suppression of the taped interview. Even if the detective's response could be perceived as an implied promise, Petitioner's statement was not rendered involuntary by reason of his desire to insure that there would be nothing "tangible that could [ ] be used against him at trial as proof of guilt." (Dkt. 1, A 2, p 2). He had already made incriminating post *Miranda* admissions before the detectives began recording. Having knowingly and voluntarily waived his Fifth Amendment rights, and having agreed to the interview, Petitioner was not in a position to dictate the manner in which the detectives

memorialized his statements.  Petitioner fails to cite any Supreme Court case holding that a defendant's written waiver of his rights under *Miranda*, *see* Dkt. 12, Ex. 17, Vol. I at 88, is rendered invalid if he advises the investigating officer that he does not want his statement tape recorded.

As to Petitioner's argument that the trial court's alternative finding that he was not prejudiced by counsel's failure to challenge the admission of the taped statement, the trial court's finding is not an unreasonable determination of the facts or an unreasonable application of the law under *Strickland*.   The state trial court relied on *Bryan v. State* in support of its conclusion that the audio recording would have been available for impeachment. 748 So. 2d 1003 (Fla. 1999). In *Bryan,* the Florida Supreme Court relied on *Mincey v. Arizona*, 437 U.S. 385 (1978).  *Mincey* held that while statements of a defendant taken in violation of *Miranda* may be excluded from the government's case-in-chief, a *Miranda* violation alone does not prevent their use as impeachment if the defendant testifies. *Id. See Mincey*, *supra*, at 397-98 ("Statements made by a defendant in circumstances violating the strictures of *Miranda v. Arizona, supra*, are admissible for impeachment if their "trustworthiness . . . satisfies legal standards.") (quoting *Harris v. New York*, 401 U.S. 222, 224 (1971)).

Under the holding and rationale of *Mincey*, even if the audio tape of Petitioner's interview had been suppressed, under Florida law, it would have been available for impeachment purposes during the State's rebuttal. Petitioner's statement that he might not have taken the witness stand if the trial court had suppressed the audio tape carries little weight as the testimony regarding his oral post-*Miranda* statements would then have been unrebutted.  The trial court's finding that "the prosecution *likely* would have been allowed

to admit [the recording] at trial to impeach testimony from [Petitioner] that his statements were taken out of context" is not objectively unreasonable. *See Williams v. Taylor*, 529 U.S. at 365; *Breedlove v. Moore*, 279 F.2d 952 (11th Cir. 2002).

Even if the trial court's finding that Petitioner failed to establish that he was prejudiced by trial counsel's failure to move to suppress the audio tape was an incorrect application of *Mincey*, Petitioner would not prevail on this claim.  During the interview, Petitioner made statements to the detectives that were not recorded. Given that Petitioner has advanced no argument that those statements were involuntary, there is no basis to conclude that the detective's testimony regarding Petitioner's unrecorded statements was inadmissible.  According to Detective Nave's testimony, the recorded statement was merely a summary of Petitioner's oral statements. Thus, suppression of the audio tape would have been of little value to Petitioner.

Moreover, Petitioner must meet *both* prongs of the *Strickland* test. The record confirms that trial counsel discussed the content of the audio tape with Petitioner and strategically used the fact that the detectives tape recorded a portion of the interview, contrary to Petitioner's understanding, as support for Petitioner's position that the detectives misrepresented his unrecorded responses to their questions.

"Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681. Under Florida law, trial counsel's strategic decisions do not constitute ineffective assistance of counsel if alternative courses of action have been considered and rejected. *Whitfield v. State*, 923 So. 2d 375 (Fla. 2005). Here, based on his candid comments to the trial judge during the bench conferences and his cross-examination of the detective, trial

counsel clearly considered alternative means to address the recorded interview and in his professional judgment, decided not to seek suppression of the audio tape.  Petitioner fails to demonstrate that trial counsel's decision to use the existence of the audio tape as a basis for impeaching the detectives' testimony regarding the unrecorded statements was an objectively unreasonable strategy under prevailing professional norms. *Strickland*, 466 U.S. at 689.

In Ground Ten, Petitioner contends that trial counsel was ineffective in failing "to object to errors in the score sheet involving [a] level 4 offense that was scored as a level 9 offense, [sic] and the lack of evidence to support a verdict of attempted sexual battery without contact which renders the 40 contact points scored against the [Petitioner] improper" (Dkt. 1, Ex. A-2 at 28).  This claim was raised in Petitioner's Rule 3.850 motion. In rejecting the claim, the trial court found:

> Defendant alleges that counsel was ineffective for failing to object to a sentencing guidelines score sheet error. Specifically, Defendant argues that his attempted sexual battery charge should have been scored as a level seven offense rather than a level nine offense, because there was no specific jury finding that Defendant used force likely to cause death or serious bodily injury. This claim was previously raised and rejected in a 3.800(a) motion. See Exhibit D: Prior Order. As stated in the prior order, Defendant's sentence of 15 years on his attempted sexual battery charge was a departure regardless of whether the offense was scored as a level seven offense or a level nine offense. In his present motion, Defendant additionally argues that had his attempted sexual battery been scored as a level seven offense his total score would have been less than 363 points.[7] Defendant argues that without at least 363 points, the Court would not have had the discretion to sentence him to life in prison. Defendant is presumably referring to his sentence on the sexual battery charge.

---

[7] Under Florida's sentencing guideline scheme, "[i]f the total sentence points are equal to or greater than 363, the court may sentence the offender to life imprisonment. An offender sentenced to life imprisonment under this section is not eligible for any form of discretionary early release, except pardon, executive clemency, or conditional medical release under s. 947.149." Fla. Stat. 921.014(2) (1997).

Defendant is not entitled to relief under this claim. Defendant was charged with attempted sexual battery pursuant to § 794.011(3)[8] and § 777.04,[9] Florida Statutes and was found guilty as charged. See Exhibit A: Information and Exhibit E: Verdict Forms. Attempted sexual battery under §794.011(3) is a level nine offense and Defendant was scored accordingly. Defendant essentially argues that the jury did not make the necessary findings to convict him of attempted sexual battery under §794.011(3), a level nine offense, but instead only met the requirements for a conviction under §794.011(5), a level seven offense. This claim, however, would have been more appropriately raised on appeal. Defendant's reliance on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000) for the present case is misplaced. *Apprendi* stands for the proposition that; a defendant's sentence cannot be enhanced beyond the statutory maximum without a finding by the jury. None of Defendant's sentences, however, exceed the statutory maximum. The Court notes that while the jury did not make a specific finding of serious personal injury under the attempted sexual battery charge, they did make the finding under the sexual battery charge. See Exhibit E. This claim is denied.

Dkt. 12, Ex. 13 (footnotes added).

Petitioner claims that there was insufficient evidence to support a verdict of

attempted sexual battery with contact, which he contends renders the 40 contact points[10]

---

[8]"A person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof uses or threatens to use a deadly weapon or uses actual physical force likely to cause serious personal injury commits a life felony, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." Fla. Stat. 794.011(3) (1997). Under Florida's sentencing guidelines, a life felony is ranked within offense level 10. Fla. Stat. 921.0013 (1997). Pursuant to Fla. Stat. 785.082(3)(a)(3)(1997), a person convicted "for a life felony committed on or after July 1, 1995, [may be sentenced to] a term of imprisonment for life or by imprisonment for a term of years not exceeding life imprisonment."

[9]"A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt, ranked for purposes of sentencing as provided in subsection (4)." Fla. Stat. 777.04(1) (1997). "Except as otherwise provided in ss. 828.125(2), 849.25(4) 893.135(5), and 921.0012, the offense of criminal attempt, criminal solicitation, or criminal conspiracy is ranked for purposes of sentencing under chapter 921 and determining incentive gain-time eligibility under chapter 944 one level below the ranking under s. 921.0012 or s. 921.0013 of the offense attempted, solicited, or conspired to." Fla. Stat. 777.04(4)(a) (1997). "Unless specifically provided otherwise by statute, attempts, conspiracies, and solicitations must be indicated in the space provided on the Criminal Punishment Code scoresheet and must be scored at one severity level below the completed offense." Fla. R. Crim. P. 3.704 and 3.992.

[10]Under Florida's rules governing criminal proceedings, "[v]ictim injury" is scored for physical injury or death suffered by a person as a direct result of any offense pending before the court for sentencing. Except as otherwise provided by law, the sexual penetration and sexual contact points will be scored as follows. Sexual penetration points are scored if an offense pending before the court for sentencing involves sexual penetration. Sexual contact points are scored if an offense pending before the court for sentencing involves sexual contact, but no penetration. If the victim of an offense involving sexual penetration or sexual contact
(continued...)

included in the sentencing score sheet "improper" (Dkt. 1, Ex. A-2 at 28). As the trial court noted, the underlying argument regarding the scoring of sexual contact points was raised in Petitioner's Rule 3.800(a) motion, albeit without success. The record reveals that the claim was also raised unsuccessfully by Petitioner on direct appeal.

Respondent argues that this claim is procedurally barred because it involves the application of Florida's sentencing guidelines. As Petitioner points out in his reply, however, Petitioner is asserting a Sixth Amendment claim of ineffective assistance of counsel in failing to object to errors in the score sheet used in determining the length of his sentence under Florida's sentencing guidelines. Thus, Respondent's argument that this claim is not cognizable in a § 2254 proceeding lacks merit.

Notwithstanding, Petitioner cannot prevail on this claim that trial counsel was ineffective in failing to object to the lack of evidence of contact relative to the attempted sexual battery to impose the victim injury points. A review of Florida's sentencing guidelines statutes confirms that the state trial court had the discretion to sentence Petitioner outside the sentencing guidelines in certain enumerated situations, *see* Fla. Stat. § 921.0016(3), as long as the sentence imposed does not exceed the statutory maximum for the offense of conviction. *See Capers v. State*, 678 So. 2d 330 (Fla. 1996). Petitioner was charged with sexual battery, a life felony,[11] and attempted sexual battery, a second degree felony

---

[10](...continued)
without penetration suffers any physical injury as a direct result of an offense pending before the court for sentencing, that physical injury is to be scored in addition to any points scored for the sexual contact or sexual penetration." Fla. R. Crim. 3.703(d)(9).

[11]Pursuant to Fla. Stat. 785.082(3)(a)(3)(1997), a person convicted "for a life felony committed on or after July 1, 1995, [may be sentenced to] a term of imprisonment for life or by imprisonment for a term of years not exceeding life imprisonment."

punishable by a sentence up to 15 years. Petitioner thus cannot establish that he was prejudiced by the assessment of the 40 contact points.

As to Petitioner's claim that the attempted sexual battery conviction was improperly scored as a level 9 offense rather than a level 4 offense, in his Rule 3.850 motion, he asserted that the attempted sexual battery conviction should have been scored as a level 7 offense rather than a level 9 offense. *See* Dkt. 12.   The trial court found that under Florida's sentencing guidelines, the attempted sexual battery offense was correctly scored as a level 9 offense. This finding by the state court regarding the application of the state sentencing guidelines is entitled to the presumption of correctness under § 2254(e). *See Breedlove v. Moore*, 279 F.3d at 963 (state courts are the final arbiter of state law and "federal courts must respect that law absent a constitutional violation" (citation omitted)). Finally, the statutes cited by the trial court support its factual finding. Petitioner has not rebutted the presumption of correctness accorded the trial court's findings by clear and convincing evidence. *See* 28 U.S.C. §2254(e).  Dkt. 12, Ex. 8 at 2.  Trial counsel is not ineffective for failing to raise a meritless objection.

Petitioner has failed to establish that the state court's adjudication of Petitioner's claims of ineffective assistance of counsel in Grounds Four and Ten was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d). Those claims, therefore, lack merit.

**Grounds Eight and Thirteen**

Because Grounds Eight and Thirteen, set forth below, suffer from the same deficiency, they will be discussed together.  In Ground Eight, Petitioner asserts:

Fundamental error occurred when the State charged the [Petitioner] with attempted sexual battery although the allegations charged form a completed offense for sexual battery, the jury convicted of attempted sexual battery and the [Petitioner] was erroneously scored forty points for contact where, but for the contact points, the [Petitioner] would not have received a life sentence.

Dkt. 1, Ex. A-2 at 19.  In Ground Thirteen, Petitioner contends that:

The score sheet was incorrectly calculated.  A correctly calculates score sheet would not have given the court the discretion to sentence the [Petitioner] to life in prison:

– scored the [Petitioner] for attempted sexual battery at level 9 (46 points), even though neither the verdict form nor the jury instructions contemplated serious physical injury or the threat of serious physical injury.  This offense should have been scored at level 7 (28 points).

– incorrectly calculated the [Petitioner's] prior record points.  The [Petitioner] was scored for two (2) prior possession of cocaine offenses as follows 2 x 3.6 = 7.2.  However, the correct level for possession of cocaine is level 3 (1.6 points) for a correct total of 3.2 points.

– the state scored forty (40) points for sexual contact as to the attempted sexual battery charge.  Sexual contact points should not be scored for an attempt.

Ground Eight was raised by Petitioner on direct appeal and in his Rule 3.800(a) motion, along with Ground Thirteen.  The appellate court rejected Ground Eight on direct appeal without written opinion. In rejecting both claims in the Rule 3.800(a) proceedings, the trial court found:

In the instant Motion, Defendant alleges multiple errors in his Sentencing Scoresheet that he asserts adversely affected his permissible sentencing range. He alleges three errors as outlined below:

(1) Defendant assert that the Attempted Sexual Battery charge should have been scored as a level seven (7) offense, instead of as a level (9) offense because there was no serious physical injury or threat of serious physical injury.

(2) Defendant asserts that his two (2) prior possession of cocaine charges were improperly scored.

-23-

(3)  He asserts that he should not have been assessed victim injury points for sexual contact on an attempted sexual battery charge.

In its Response, State contends that Defendant is not entitled to re-sentencing because any errors in the scoresheet do not affect Defendant's sentence and the Court agrees.

The alleged errors as outlined above will be treated in a descending order. The victim injury points for sexual contact on the attempted sexual battery charge were properly assessed. *See Seagrave v. State*, 801 So. 2d 281 (Fla. 2001); *Louis v. State*, 764 So. 2d 930 (Fla. 4th DCA 2000). Additionally, the State points out that this issue was addressed on direct appeal and affirmed at 763 So. 2d 330 without published opinion. [Exhibit D: Appellant's Brief, Topical Index].

Additionally, although conceded by the State that the points under the prior record section for possession of cocaine were incorrectly scored, a recalculation of the scoresheet is not necessary.

Finally, even if Defendant were correct that the attempted sexual battery charge should have been scored as a level seven offense and not a level nine offense (and possession charges correctly scored), the errors in his Sentencing Scoresheet did not adversely affect his sentence. [Exhibit E: Sentencing Scoresheet (prepared by Court for illustrative purposes only)]. Defendant was sentenced on the attempted sexual battery charge to fifteen years, a downward departure sentence based on either version of the Scoresheet. [Exhibit F: Sentencing Scoresheet]. It is also noted that any error with regard to jury instructions could have and should have been raised on appeal. *See White v. Dugger*, 565 So. 2d 700 (Fla. 1990); [*see* Exhibit D].

Dkt. 12, Ex. 8.

Grounds Eight and Thirteen raise issues regarding the application of Florida's sentencing guidelines.  A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *See Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir.1983); *Llamas-Almaguer v. Wainwright*, 666 F.2d 191 (5th Cir.1982). As stated by the Eleventh Circuit Court of Appeals in *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988), "[i]n the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures." *see also*

*Nichols v. Estelle*, 556 F.2d 1330, 1331 (5th Cir.1977) ("federal courts do not review a state's failure to adhere to its own sentencing procedures. . . ."), *cert. denied*, 434 U.S. 1020 (1978). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process." *Branan*, 861 F.2d at 1508 (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir.1976)). Since these claim are based exclusively on state law issues that are merely "couched in terms of equal protection and due process," they must be denied. *Willeford*, 538 F.2d at 1198.

Petitioner's argument that the claim raised in Ground Eight constitutes "fundamental error . . . [and is] not a sentencing guidelines scoring error but rather is an error resulting in the imposition of a life sentence in violation of the Petitioner's right under the Eighth Amendment not to be subject to disproportionate sentences" *see* Dkt. 15 at 16, is, for the reasons discussed in Ground One, unpersuasive.

**Exhaustion and Procedural Default**

Title 28 U.S.C. § 2254(b) requires the exhaustion of state court remedies before a federal habeas corpus application will be entertained. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct

alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

**Ground Two**

Ground Two was raised by Petitioner as Ground One on direct appeal. The crux of Petitioner's complaint is the limitation the trial court imposed on the impeachment of Connie Alderman with prior inconsistent statements she allegedly made during her deposition and the exclusion of Alderman's proffered testimony in the defense's case in chief.

Petitioner asserted a defense of coercion based on co-defendant Anderson's statement to him that "you either kick ass or we are going to start kicking some ass." Admitting that there was no overt threat made to harm him, Petitioner testified that given Anderson's statement, he attacked the victim to avoid having co-defendants Hughes and Anderson turn on him (Dkt. 12, Ex. 17, Vol. IV at Tr. 390).

Alderman testified that she and co-defendant Hughes had dated off and on for 10 years. Hughes took Alderman to the victim's apartment on the evening in question. Alderman testified that she went to the door of the victim's bedroom when she heard him crying out for help and remained there throughout the incident. Alderman further testified that Hughes did enter the bedroom and "fight" with the victim on at least one occasion, but denied ever knowing of Hughes doing "anything like this" before (Dkt. 12, Ex. 17, Vol. III at Tr. 296-97). When Alderman remained adamant on this point, a bench conference was conducted during which trial counsel argued that he should be allowed to impeach her testimony with a statement he alleged she made during her deposition that her brother had been "solicited by [Hughes] to urinate on a complete stranger and drunk." *Id.* at 297. The prosecutor objected on grounds of relevancy. Arguing that Hughes was not on trial, the

-26-

prosecutor requested that trial counsel provide a reference for the prior inconsistent statement in the record. Agreeing to do so, trial counsel argued that Alderman's prior inconsistent statement would impeach her credibility and reveal her bias toward Hughes, which was relevant to Petitioner's coercion defense.   The trial court found that the statement attributed to Alderman was inadmissible hearsay, and sustained the prosecutor's objection.

When the jury was excused for the lunch recess, trial counsel informed the trial court that he had not yet found the reference for the statement he contended Alderman made during her deposition. *Id.* at Tr. 317.  The trial court instructed trial counsel to "find the deposition and you can refer to that as far as the proffer is concerned, for purposes of the record." When the trial recommenced, the following exchange occurred:

Trial Counsel: Can we take care of the matter of the proffer before on – Judge, I do not have in transcript of Connie Sue Alderman. We did depositions of Miss Alderman, mother and stepfather on the [sic] August 17th. During that deposition process, one of those witnesses told me that Connie's brother, after this came out about, [sic] they discovered that [Hughes] had previously gone out and solicited Connie's brother to urinate on a drunk on the side of the road.  And that is my basis for asking the question.  It is made in good faith, but it is not in this transcript.

Court: Is it in the transcript of one of the other witnesses?

Trial Counsel: I didn't order those other transcripts.  But I am telling you that I was told, and that is not something I'm deluding on.

Court: All right.  And you don't know whether it was Miss Alderman that told you or one of the other witnesses?

Trial Counsel: Let's see.  I'm leaning towards the mother.  Massengill is the name. It's not Alderman.  It's Massengill.

Court: I don't have a problem if you want to have that transcribed and then made a part of the record for proffer purposes, because I don't want the appellate Court [sic] guessing as to what the basis of it was.  I

mean, I'll order that if [sic] want to make that part of the record, all right?

Trial Counsel: That's fine. I don't think that is necessary. I'm just telling you that there might be – I anticipate that this witness would not deny that fact.

Court: Well, I understand. I ruled on the evidentiary ground that she wasn't going to be asked that question.

. . . . .

Court: Additionally more [sic] – I don't know the right way to say it. It's further removed and attenuated from what you originally asked, thinking the information was available.

Trial Counsel: My point is that she knows about it, and she is saying that he doesn't do these kinds of things. Thank you, Your Honor.

Court: All right. I think my ruling and your proffer has been amply saved for purposes of prosperity in our record.

Dkt. 12, Ex. 17, Vol. III at Tr. 319-21. Although afforded an opportunity to do so, neither the State nor the defense requested a transcript of Ms. Massengill's deposition testimony. *Id.* at 321.

Respondent contends that this claim is procedurally barred because the federal dimension of the claim was not presented to the trial court. Petitioner argues to the contrary, asserting that he presented the federal dimension of this claim to the trial court by citing *McBean v. State*, 688 So. 2d 383 (Fla. 4th DCA 1997) (finding that the trial court erred in not allowing cross-examination of a State witness with regard to omissions made in pretrial statements), a decision that Petitioner contends was based on *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980).[12] *McBean* is, however, distinguishable. Here, trial

_____

[12]The crux of the *Jenkins* holding is that the use of a defendant's prearrest silence for impeachment purposes does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process if such silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty. 447 U.S. at 239.

(continued...)

counsel wanted to impeach Alderman with a prior inconsistent statement he alleged she made under oath during her deposition rather than an omission which would "naturally have been mentioned" during questioning. Further, a review of *McBean* reveals that the state district court relied on a state statute and a 1990 decision by the Florida Supreme Court for the proposition that "[i]t is well settled that a witness may be impeached by a prior inconsistent statement, including an omission in a previous out-of-court statement about which the witness testifies at trial, if it is material and *would naturally have been mentioned*." *McBean, supra,* at 384 (emphasis added) (citing Fla. Stat. § 90.608(1) (1995); *State v. Smith*, 573 So. 2d 306, 313 (Fla. 1990)). *Smith*'s citation of *Jenkins* in support of its finding regarding impeachment by omission does not satisfy § 2254(b)(3)'s exhaustion requirement in this case.

"[A] state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004). Citing a case which cites a case citing a Supreme Court case does not satisfy the exhaustion requirement.   "[T]o exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for relief." *Henry v. Dept. of Corr.,* 197 F.3d 1361, 1366 (11th Cir. 1999) (quoting *Gray v. Netherland,* 518 U.S. 152 (1996)); *Zeigler v. Crosby,* 345 F.3d 1300, 1307 (11th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004). Petitioner did not cite any federal cases in his initial appellate brief, nor did he refer to the United States Constitution. *See Baldwin, supra,* at 32.

---

[12](...continued)

Directing this Court's attention to the state appellate court's rejection of this claim without written opinion, Petitioner argues that "Respondent should not be allowed to complain that the appellate court was prevented from considering this issue in light of federal law if the Respondent cannot show that the court limited its analysis to state law" (Dkt. 15 at 7). This argument is foreclosed by the holding in *Wright v. Sec. of Dep't of Corrs.* that state court decisions without written opinions are entitled to the same deference as if the state court had entered written findings to support its decision. 278 F.3d at 1255. Further, in this circuit, the courts follow the "familiar principle that federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999).

Where, as here, "the petitioner simply never raised [the federal dimension of his] claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal." *Id.* at 1303. The issue in this case is exhaustion of the federal dimension of the claim, a statutory requirement which the State has not expressly waived. *See* 28 U.S.C. 2254(b)(3). *See also McNair v. Campbell,* 416 F.3d 1291, 1302-04 (11th Cir. 2005). In *Duncan,* the court held: "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, *he must say so,* not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. at 365-66. *See also McNair v. Campbell*, 416 F.3d at 1302 ("[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record" (citation omitted)).

**Grounds Three, Five, Six, Seven, Nine, Eleven and Twelve**

Respondent correctly contends that the claims presented in Grounds Three, Five, Six, Seven, Nine, Eleven, and Twelve are not properly exhausted in state court.

While closely related to his claim in Ground Ten that the evidence was insufficient to support his attempted sexual battery conviction, in Ground Three of the petition, Petitioner asserts:

> Trial counsel was ineffective for failing to asure [sic] correct sentencing scoresheet. The State scored (40) points for sexual contact as to the attempted sexual battery charge. Sexual contact points should not be scored for an attempt. The extra (40) sentencing points gave the trial court discretion to impose a life imprisonment.

Dkt. 1 at 6.[13] In support of this claim, Petitioner directs the Court's attention to the Motion to Correct Illegal Sentence he filed pursuant to Fla. R. Crim. P. 3.800(a) (Dkt. 1, Ex. A-3). Petitioner did not, however, assert an ineffective assistance of counsel claim in his Rule 3.800(a) motion. A review of the record reveals that Petitioner instead raised an ineffective assistance of counsel claim in his Rule 3.850 motion on grounds that trial counsel failed to insure that the attempted sexual battery offense was scored as a level seven offense because the "jury failed to make a specific finding of the use of force likely to cause death or serious bodily injury" (Dkt. 12, Ex. 12 at 4). On direct appeal, Petitioner asserted that the trial court erred in scoring sexual contact in an attempted sexual battery judgment. Petitioner has not, however, asserted that trial counsel was ineffective at sentencing in

---

[13] Petitioner set forth three claims for relief on the § 2254 form and attached copies of the brief he filed on direct appeal, a Memorandum of Law reputedly filed in support of his Rule 3.850 motion, and his Rule 3.800(a) motion to the § 2254 form. Ground Two set out on the § 2254 form was raised by Petitioner on direct appeal as Ground One. There, Petitioner asserted that the trial court erred in scoring sexual contact points based on the attempted sexual battery conviction, a claim that, as Respondent contends, was raised in terms of state law only. As Petitioner argues in his reply, in Ground Three of these proceedings he is asserting that trial counsel was ineffective at sentencing. While Petitioner is correct that Sixth Amendment ineffective assistance of counsel claims are cognizable under § 2254, as discussed above, Petitioner has not cleared the statutory hurdle he must overcome to warrant relief on this claim. *See* 28 U.S.C.§ 2254(b)(3).

relation to the scoring of sexual contact points on the attempted sexual battery charge. This claim is, therefore, not exhausted in state court, and thus procedurally defaulted.[14]

In Ground Five, Petitioner contends that trial counsel was ineffective in failing to "investigate [the] victim's background for homosexuality, failed to impeach [the] victim on material points, failed to call impeachment witnesses, and failed to exclude Todd Hughes, a co-defendant, from the courtroom because of prior death threats to the victim and his personal relationship with key state witness Connie Alderman; alternatively, counsel failed to request a 2.04(7) weight instruction as to whether any pressure or threat had been used against a witness that affected the truth of the witness' [sic] testimony, which deprived the [Petitioner] of fundamental fairness and jury trial." Dkt. 1, Ex. A-2 at 3.

In Ground Nine, Petitioner contends that trial counsel was ineffective in failing to develop a coherent theory of defense, misstating the evidence which was damaging to the defense, and making statements during closing argument that were harmful to the defense. Petitioner further contends that but for trial counsel's ineffective assistance, he would have accepted the plea bargain offer of twenty-one years imprisonment to be followed by seven years' probation. *Id.* at 23. Petitioner asserts in Ground Eleven that Count Three of the Information charging him with attempted sexual battery was facially deficient. *Id.* at 29.

---

[14]Rule 3.703(d)(9), Fla. R. Crim. P., provides that "sexual contact points are scored if an offense pending before the court for sentencing involves sexual contact, but no penetration." The transcript reflects that trial counsel did, indeed, argue against the imposition of the sexual contact points on the attempted sexual battery charge (Dkt. 12, Ex. 17, Vol. V at Tr. 572-74).  As Petitioner acknowledged on direct appeal, "[t]his point was vehemently argued by the Defense at the time of sentencing" (Dkt. 12, Ex. 1 at 6). As the trial judge pointed out in response, "there was clear testimony that [Petitioner's] penis came in contact with the victim in this case" (Dkt. 12, Ex. 17, Vol. V at Tr. 573). Trial counsel's argument demonstrates proper preparation for sentencing on this issue. *Id.* It cannot be said that such performance was unreasonable under prevailing professional norms.  *Strickland*, 466 U.S. at 688. Trial counsel is not ineffective for failing to prevail on an argument.

In Florida courts, the claims of ineffective assistance of counsel presented in Grounds Five and Nine must have been raised under Rule 3.850. *Blanco v. Wainwright*, 507 So. 2d 1377, 1384 (Fla. 1987). The challenge to the sufficiency of the charging document presented in Ground Eleven should have been raised as a motion to dismiss at trial and renewed on direct appeal.[15] *Castillo v. State*, 929 So. 2d 118, 1181 (Fla. 4th DCA 2006). Ground Eleven was not presented on direct appeal, and as discussed below, post-conviction counsel did not raise Grounds Five and Nine in Petitioner's Rule 3.850 motion. These claims were not exhausted in state court and they are now procedurally barred from review.

In Ground Twelve, Petitioner asserts that trial counsel was ineffective in failing to object to erroneous and misleading jury instructions on the attempted sexual battery offense. Dkt. 1, Ex. A2 at 30.  The record rebuts Petitioner's contention that this claim was raised as Ground Three in his Rule 3.850 motion. Ground Three of the Rule 3.850 motion alleged:

> [Petitioner] was "deprived [of] his Sixth Amendment Right to Effective Assistance of Counsel by counsel's failure to object to the Sentencing Guidelines Score sheet submitted by the State at Sentencing.  The Score sheet used by the Judge at Sentencing scored Attempted Sexual battery at a level 9 offense, which carries a point value of 46 points as an additional offense at sentencing.  However, Attempted Sexual Battery without a specific

---

[15]Petitioner argues that the Information "improperly charges attempted sexual battery where it alleges a completed sexual battery" and fails to allege a specific intent to commit a completed sexual battery. The information charges that Petitioner "did *attempt* to commit a sexual battery upon [the victim] by placing the penis of [Petitioner] into or in union with the mouth of [the victim], without the consent of [the victim], and in the process thereof did use actual physical force likely to cause serious personal injury to the [victim]; contrary to Chapter 794.011(3)/777.04, Florida Statutes." Dkt. 12, Ex. 8 at R. 188 (emphasis added). The language used in the information tracks the statute. *See State v. Gray*, 435 So. 2d 816 (Fla.1983) (the information, which was drafted substantially in the language of the statute, was sufficient)  As stated in *L.J. v. State*, "an attempt involves two essential elements:  specific intent to commit the crime and a separate overt, ineffectual act done towards its commission." 421 So. 2d 198 (Fla. 3d DCA 1982). Where there is "a complete failure of an accusatory instrument to charge a crime" the error is deemed fundamental and "can be raised at any time – before trial, after trial, on appeal, or by habeas corpus." *State v. Gray*, 435 So. 2d at 818.  That is not the case here.

> finding of the use of force likely to cause death or serious bodily injury, should be scored as a Level 7 offense, which carries a point value of 28 points. The difference between the two offense levels is 18 points. The trial judge informed the jury, in written as well as oral instructions, that the Defendant was simply charged with Attempted Sexual Battery.

Dkt. 12, Ex. 12 at 3-4.

As Petitioner states in his reply, a discussion of the jury instruction for attempted sexual battery was "contained" in the third issue presented in Petitioner's Rule 3.850 motion and in his appellate brief challenging the trial court's rejection of his ineffective assistance of counsel claim. Petitioner did not, however, assert, explicitly or implicitly, that trial counsel was ineffective for failing to object to the jury instructions on the attempted sexual battery offense. Rather, Petitioner asserted that trial counsel was ineffective in failing to object to the sentencing guideline score sheet. This claim is, therefore, procedurally barred from review in state court. *See* Fla. R. Crim. P. 3.850. Because Petitioner did not present his constitutional claim to the highest state court, it has not been properly exhausted.

Acknowledging that Grounds Five, Nine, and Eleven were not presented in the Rule 3.850 motion filed by counsel, Petitioner points out that they do, "however, appear in Appendix A-2 of the Petitioner's *pro se* Petition contained in a document entitled Memorandum of Law" (Dkt. 15 at 19). Notably, Petitioner was represented by counsel during the Rule 3.850 proceeding. However, the document to which Petitioner directs the Court's attention states that it was to be filed "*pro se*" (Dkt. 1, Ex. A-2 at 1). Florida courts do not consider documents filed by a defendant *pro se* as properly before the court once counsel has made an appearance on behalf of that defendant. *See Logan v. State*, 846 So. 2d 472, 478-79 (Fla. 2003); *Lee v. State*, 779 So. 2d 341-42 (Fla. 2d DCA 2000) (striking *pro se* notice of pending motion and directing the trial court to strike the pending

-34-

*pro se* motion). *See also Purnell v. State*, 931 So. 2d 134, 135 (Fla. 2d DCA 2006) (*pro se* motion filed while the defendant was represented by counsel should be stricken as a nullity) (citation omitted)).

Petitioner's attorney concedes that "[i]t is unclear from the face of this Memorandum if or when it was filed with the trial court," and acknowledges that based on his "review of the Pinellas County case docket . . . [he] cannot represent that this Memorandum of Law was filed" in the Rule 3.850 proceedings (Dkt. 15 at 19). Petitioner does not allege that the document was filed and then misplaced or lost. *See Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] district court should not place the burden on a habeas petitioner to prove what he alleged in his state court motion for post-conviction relief when the state court loses the motion through no fault of the petitioner.").

An inconsistency in the Rule 3.850 motion filed by post-conviction counsel, the trial court's order rejecting Ground One of the Rule 3.850 motion, the Rule 3.850 appellate brief, and the Memorandum of Law filed by Petitioner in support of the § 2254 petition further indicates that this document was not before the trial court during the Rule 3.850 proceedings. Petitioner was interviewed by Detectives Tonia Nave and Steve Corbett. The Rule 3.850 motion filed by post-conviction counsel asserts that "Detective Corbett activated a tape recorder in his pocket without the [Petitioner's] knowledge" (Dkt. 12, Ex. 12 at 2). In the order rejecting this claim, the trial court stated: "Defendant argues that Detective Corbett activated a recorder in his pocket without Defendant's knowledge, thereby producing an audiotape" (Dkt. 12, Ex. 13 at 1). Likewise, on appeal of the denial of the Rule 3.850 motion, post-conviction counsel argued that Detective Corbett initiated the recording of Petitioner's statement (Dkt. 14 at 3). In the Memorandum of Law submitted in

support of his § 2254 petition, however, Petitioner asserts that "Detective Nave activated his tape recorder without knowing if the Defendant could see it" (Dkt. 1, Ex. A-2 at 1).

Respondent has filed the state court record. The *pro se* Memorandum of Law to which Petitioner directs the Court's attention is not part of that record. As Petitioner acknowledges, the trial court docket does not reflect that the Memorandum of Law was ever filed in Petitioner's Rule 3.850 proceedings, *see* Dkt. 6, Ex. A. Rather than argue that the claim was presented to the state court, Petitioner challenges Respondent's argument that claims which have been found to be procedurally barred in state court or are not exhausted but would clearly be barred if returned to state court are procedurally barred in federal court (Dkt. 15 at 13).   Petitioner requests that this Court make a "specific determination" these claims are procedurally barred (Dkt. 15 at 19).

Finally, Petitioner's reliance on *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that other than a prior conviction, any fact that increases the penalty for a crime beyond *the statutory maximum* must be submitted to a jury) is likewise misplaced. Petitioner did not raise an *Apprendi* issue on direct appeal, and *Apprendi* is not retroactively applicable to cases on collateral review. *McCoy v. United States*, 266 F.3d 1245 (11th Cir. 2001); *Hamm v. United States*, 269 F.3d 1247 (11th Cir. 2001).

Even if *Apprendi* was retroactive, it would not be applicable to the instant case.   In *Apprendi*, the Supreme Court established that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. at 490.

In the instant case, Petitioner was sentenced in accordance with Fla. Stat. § 775.082 (1997) to serve concurrent terms of natural life on the sexual battery charge, a life felony,

see Fla. Stat. § 794.011(3); 15 years each on the aggravated battery and attempted sexual battery charges, both second degree felonies, *see* Fla. Stat. § 784.021(2) and §§ 794.011(3)/777.04 (1997); and 5 years on the lesser included offense of false imprisonment, a third degree felony, *see* Fla. Stat. § 787.02(2) (1997). See Dkt. 12, Ex. 17, Vol. I at R. 52-61. Since none of Petitioner's sentences exceed the statutory maximum, there is no *Apprendi* issue.

The claims raised in Grounds Six and Seven of the petition were presented to the trial court in Petitioner's Rule 3.850 motion. In his appellate brief, Petitioner advised the state court that he was abandoning these two claims. *See* Dkt. 12, Ex. 14 at 2. Because Petitioner abandoned these claims on appeal, they are now procedurally barred from review in state court. *See State v. Mitchell*, 719 So. 2d 1245, 1247 (Fla. 1st DCA 1998), *rev. denied*, 729 So. 2d 393 (Fla. 1999). *See also Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal of its denial" (citation omitted)).[16]

Claims or portions of claims which are not exhausted but would clearly be barred if returned to state court must be dismissed. *See Coleman v. Thompson,* 501 U.S. 722, 735 (1991); *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Here, it would be futile to dismiss this case to give Petitioner the opportunity to exhaust these claims because they could have and should have been included in his appeal of the order denying his Rule 3.850 motion. *See* Fla. R. Crim. P. 3.850(g).[17] Because Petitioner did not present his

---

[16] Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[17] Also, if the petitioner attempts to raise the claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994), *cert. denied*, 513 U.S. 1061 (1994).

constitutional claims to the highest state court, they have not been exhausted and are now procedurally barred in state court.

As discussed, § 2254(b) requires the exhaustion of all state court remedies before a federal habeas corpus application will be entertained. *O'Sullivan v. Boerckel*, 526 U.S. at 842. *See also Henderson v. Campbell*, 353 F.3d at 891.

Nothing in the record suggests that the statutory exceptions to the exhaustion requirement are applicable to the present case. *See* 28 U.S.C. § 2254(b)(1)(B). The failure to properly exhaust state court remedies for Grounds Two, Three, Five, Six, Seven, Nine, Eleven, and Twelve when remedies were available results in a procedural default of these claims. *O'Sullivan*, 526 U.S. at 847.

As state remedies are no longer available, Petitioner must show either "cause and prejudice" or "manifest injustice" to overcome this procedural default. *Tower v. Phillips*, 7 F.3d at 210. Petitioner offers no reason for his failure to raise these claims in the state courts and the Court discerns nothing which would amount to good cause to overcome his default. Likewise, there is nothing in the record that suggests a miscarriage of justice will occur if the Court does not reach the merits of these claims. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). Because Petitioner fails to proffer "specific facts which support a finding that one of the exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of Grounds Two, Three, Five, Six, Seven, Nine, Eleven, and Twelve. *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions,

and close this case.

**ORDERED** in Tampa, Florida, on _March 30th_, 2007.

JAMES D. WHITTEMORE
United States District Judge

Copies furnished to:
Petitioner, *pro se*,  Counsel of Record